**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MSA INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.   4:19-cv-04151** |
| | § | |
| **SLI FRAMING COMPANY, INC., ICI** | § | |
| **CONSTRUCTION, INC., and ILLINOIS** | § | |
| **UNION INSURANCE COMPANY,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF MSA INSURANCE COMPANY'S
COMPLAINT SEEKING DECLARATORY JUDGMENT**

TO THE HONORABLE COURT:

Plaintiff MSA Insurance Company files this Complaint for declaratory judgment and respectfully shows the following to the Court:

**I.
PARTIES**

1.      MSA Insurance Company ("MSA") is a South Carolina corporation with a principal place of business in Jacksonville, Florida. For diversity purposes, MSA is not a Texas or Illinois citizen.

2.      SLI Framing Company, Inc. ("SLI") is a Texas corporation with a principal place of business in Kemah, Texas. SLI may be served through its registered agent, Peter Schutmatt, at 2208 Mission Drive, Kemah, Texas 77565 or wherever he may be found. For diversity purposes, SLI is not a South Carolina or Florida citizen.

3.      ICI Construction, Inc. ("ICI") is a Texas corporation with a principal place of business in Spring, Texas. ICI may be served through its registered agent, Timothy C. Ross, at

1885 Saint James Place, 15th Floor, Houston, Texas 77056 or wherever he may be found. For diversity purposes, ICI is not a South Carolina or Florida citizen.

4.      Illinois Union Insurance Company ("Illinois Union") is an Illinois corporation with a principal place of business in Chicago, Illinois. As an eligible surplus lines insurer in Texas, Illinois Union may be served with process at P.O. Box 1000, Philadelphia, PA 19106 via the Commissioner of Insurance, Texas Department of Insurance, c/o Chief Clerk Office, P.O. Box 149104, MC 113-2A, Austin, Texas 78714-9104. TEX. INS. CODE § 804.201. For diversity purposes, Illinois Union is not a South Carolina or Florida citizen.

## II.
## JURISDICTION AND VENUE

5.      MSA's citizenship is completely diverse from SLI, ICI, and Illinois Union's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. The arbitrator in the underlying arbitration assessed damages totaling $1,063,199.38, subject to offset, against SLI for costs to remedy siding-installation defects. ICI and Illinois Union have claims to $320,980.38 and $742,219, respectively, of the $1,063,199.38 awarded. The policy at issue in this action has a $1,000,000 limit per "occurrence," which is potentially implicated by the arbitrator's award. Therefore, the Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1).

6.      The Court has personal jurisdiction over SLI and ICI because they are Texas citizens.

7.      Illinois Union is an insurance company doing business in Texas. It issued an insurance policy to Simpson Kaplan District at Memorial, LLC ("Simpson Kaplan") in connection with the construction of the District at Memorial apartment project in Houston, Texas—the project underlying this lawsuit— and remitted insurance proceeds to Simpson Kaplan to remedy siding-

installation defects. Illinois Union subsequently filed a lawsuit in Harris County, Texas, against ICI and SLI to recover the insurance proceeds that it paid to Simpson Kaplan, rendering Illinois Union a potential judgment creditor of SLI. This action partially arises out of Illinois Union's contacts with Texas. Because Illinois has purposefully availed itself to the benefits of Texas law and established minimum contacts with the State of Texas such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice, the Court has personal jurisdiction over Illinois Union.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in Harris County.

## III.
## FACTS

### A.  District at Memorial Project

9.      This lawsuit arises out of the construction of The District at Memorial apartment complex, on which SLI was hired to install framing and siding in the complex's courtyard.

10.      Simpson Kaplan contracted ICI on March 24, 2014, to construct an apartment complex, The District at Memorial, at 10300 Katy Freeway, Houston, Texas 77043. The District at Memorial is a 326-unit apartment complex divided among two buildings and constructed around a multilevel parking garage. For construction purposes, the buildings were subdivided into sections lettered A-F.

11.      ICI subcontracted SLI on August 20, 2014, to perform framing labor, including siding installation, and notified SLI to commence work on August 27, 2014.

12.      On February 11, 2015, SLI subcontracted Jose H. RDZ, Inc. ("RDZ") pursuant to a master craft agreement. RDZ subsequently installed siding in the courtyards at the District at Memorial project.

13.     On information and belief, SLI or RDZ began installing sheathing, weather-resistive barrier, and siding in the courtyards on or about January 23, 2015, and concluded such work on or about November 6, 2015.

14.     Thereafter, experts retained by Simpson Kaplan opined that the courtyard siding was installed improperly, which allowed water intrusion and damage. Simpson Kaplan eventually hired a different contractor to remove and replace all courtyard siding and windows.

**B.  Arbitration**

15.     On or about June 9, 2017, ICI filed its Second Demand for Arbitration against Simpson Kaplan and Third-Party Demand for Arbitration against SLI and other subcontractors.[1]

16.     Based on Arbitration filings, SLI or RDZ installed the courtyard siding defectively or otherwise not in compliance with the manufacturer's instructions, which allowed water to penetrate behind weather-resistive barriers and mold to grow on interior building components.

17.     Based on Arbitration filings, there were no roof coverings to prevent water from getting behind sheathing, weather-resistive barriers, windows, and siding during the following time periods:

        a.   Building A: January 23, 2015, to March 6, 2015;

        b.   Building B: January 31, 2015, to March 13, 2015;

        c.   Building C: April 17, 2015, to May 8, 2015;

        d.   Building E: February 20, 2015, to March 20, 2015; and

        e.   Building F: January 23, 2015, to March 6, 2015.

18.     Based on Arbitration filings, Simpson Kaplan eventually removed and replaced all courtyard siding and windows.

---

[1]   *ICI Const., Inc. v. Simpson Kaplan District at Memorial, LLC*, no. 01-16-00050316 in the American Arbitration Association ("Arbitration").

19.     On March 25, 2019, the arbitrator rendered his Final Award[2], which included the following notable findings:

     a.  ICI did not breach its contract with Simpson Kaplan, rendering ICI the prevailing party and entitling it to its outstanding contract balance;

     b.  Simpson Kaplan must pay ICI's reasonable attorney fees;

     c.  the reasonable cost to remedy the courtyard siding is $1,063,199.38;

     d.  the damages owed by SLI and RDZ for siding remediation is $320,980.38 after deducting the insurance proceeds paid by Illinois Union to Simpson Kaplan ($742,219);

     e.  fault for the courtyard siding defects is apportioned 15% to SLI and 85% to RDZ "because the vast majority of the siding deficiencies were caused by installation problems as opposed to poor supervision";

     f.  SLI is entitled to its $201,606.65 outstanding subcontract balance from ICI; and

     g.  ICI will recover the difference between the remediation costs and the unpaid contract balance from SLI and R&S Commercial Services (another subcontractor) after full offsets.

## C.  Subrogation Lawsuit

20.     On December 13, 2018, Illinois Union, as subrogee of Simpson Kaplan, filed a lawsuit against ICI and SLI to recover insurance proceeds paid to Simpson Kaplan regarding the District at Memorial Project, courtyard siding defects, and underlying damage.[3] Overall, Illinois Union remitted $742,219 at most to Simpson Kaplan for courtyard siding remediation.

21.     Illinois Union complains that indications of widespread water intrusion and mold growth were observed during site inspections between July 24-27, 2017. A subsequent inspection in August 2017 purportedly revealed the existence of mold spores in thirteen apartment units. Additionally, the courtyard siding was inspected in or about September 2017 and purportedly

---

2   *See* Exhibit A.

3   *Illinois Union Ins. Co., as subrogee of Simpson Kaplan District at Memorial LLC v. ICI Const., Inc. and SLI Framing Co., Inc.*, cause no. 2018-88580 in the 333rd District Court, Harris County, Texas ("Subrogation Lawsuit").

showed widespread nailing and window flashing defects that allowed water intrusion into exterior gypsum and plywood sheathing and, consequently, mold growth.

**D.  Insurance**

22.     MSA issued commercial general liability policy MOJ01050 to "SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc." for the annual term of February 16, 2014, to February 16, 2015 ("Policy").[4] MSA is defending SLI under a reservation of rights in the Arbitration and Subrogation Lawsuit.

**IV.**
**DECLARATORY JUDGMENT**

23.     Paragraphs 1-22 are incorporated herein by reference.

24.     MSA brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201-2202.

25.     MSA seeks a declaration that the damages awarded against SLI in the Arbitration are not covered under the Policy and that MSA does not have a duty to defend or indemnify SLI in the Arbitration.

26.     MSA also seeks a declaration that the damages alleged in the Subrogation Lawsuit are not covered under the Policy and that MSA does not have a duty to defend or indemnify SLI in the Subrogation Lawsuit.

**A.  Insuring Agreement**

27.     Paragraphs 1-26 are incorporated herein by reference.

28.     The Policy provides coverage for certain "property damage" caused by an "occurrence" during the effective policy period:

---

4     *See* Exhibit B.

**SECTION I – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**[5]

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to … "property damage" only if:

      (1) The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The … "property damage" occurs during the policy period, and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of the claim, knew that the … "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the … "property damage" occurred, then any continuation, change or resumption of such … "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

      …

29.     According to invoices submitted by SLI to ICI, SLI or RDZ began installing courtyard sheathing, weather-resistive barrier, and siding on or about January 23, 2015, and concluded such installation on or about November 6, 2015. SLI had performed such work for about 25 days when the Policy's effective term expired on February 16, 2015.[6] Photographs and expert

---

5   As amended by endorsement form CG 00 57 09 99.

6   Acceptance Indemnity Insurance Company, a subsidiary of IAT Insurance Group, issued policies to SLI that spanned February 16, 2015, to February 16, 2017.

reports produced during the Arbitration show that SLI or RDZ completed minimal siding work during the Policy's effective term. No covered damages occurred during the Policy's effective term.

## B. Coverage-Form Exclusions

30.     Paragraphs 1-29 are incorporated herein by reference.

31.     The Arbitration and Subrogation Lawsuit both involve facts and allegations, including but not limited to those summarized above, that trigger multiple coverage-form exclusions in the Policy. The following coverage-form exclusions apply here and exclude coverage:

### 2. Exclusions

This insurance does not apply to:

#### a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

#### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in a contract or agreement that is an "insured contract", provided the … "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of … "property damage", provided:

(a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

#### j. Damage to Property

"Property damage" to:

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impair Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after is has been put to its intended use.

## C.  Policy Endorsements

32.    Paragraphs 1-31 are incorporated herein by reference.

33.    The Arbitration and Subrogation Lawsuit both involve facts and allegations, including but not limited to those summarized above, that trigger multiple endorsements in the Policy.

34.    In the Arbitration, ICI asserts that SLI breached its subcontract with ICI by failing to perform the siding installation in a good and workmanlike manner. Under the Policy, there is no coverage for any claim, suit, or damages for breach of contract:

### GENERAL EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed the following exclusions are made a part of this policy:

…

### DEFENSE OBLIGATION

Our determination regarding a defense obligation under this policy may be made on evidence or information extrinsic to any complaint or pleading presented to us. The Company has the right to select counsel to defend you or any other insured that is entitled to a defense under this policy. In the event that you or any insured or indemnitee are entitled by law to select independent counsel to defend you or any insured at the Company's expense and you/any insured elect(s) to select such counsel, the attorneys' fees and all other litigation expenses we must pay are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims in the community where the claim arose or is being defended.

This policy does not apply to any claim or suit for fraud, breach of warranty, breach of contract or any alleged damages arising there from [sic], including but not limited to interest, penalties, warranty work repairs, or attorneys' fees.

This policy does not cover an award of attorneys' fees. Attorneys' fees are not considered damages any insured is "legally obligated to pay" for purposes of this policy, regardless of the cause of action for which they are sought or awarded.

MSA AL 2912 AR MJ 01/09

35.     In the Arbitration, the arbitrator determined a portion of the siding deficiencies were caused by SLI's poor supervision rather than defective installation. Under the Policy, there is no coverage for "property damage" arising out of SLI's supervision:

### EXCLUSION – CONSTRUCTION PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed the following exclusion is made a part of this policy.

The following exclusion is added to paragraph 2., Exclusion of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph 2., Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to … "property damage" … arising out of:

1. The preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs or specifications by any architect, engineer or surveyor;

2. Inspection, supervision, quality control, architectural or engineering services done by or for you.

MSA WML-3407 (03/05)

36.     SLI installed or permitted RDZ to install courtyard siding for at least twenty-one days without roof coverings in place to protect against water intrusion. Under the Policy, there is no coverage for resulting "property damage" if SLI fails to cover open roofs:

## ROOFING OPERATIONS EXCLUSION

The Insured agrees, as a condition of coverage, to the following endorsement:

All "Open Roofs" shall be covered by the contractor if the roof is to be left unattended. Contractor must take "Appropriate" steps to determine adverse weather and provide "Appropriate" temporary waterproof coverage, able to withstand the elements. If contractor fails to do either, any resulting "Property Damage" to any building or structure or its content(s) will not be covered by this policy.

The term "Open Roofs" as used in this endorsement shall include any roof or section thereof where the protective covering (shingles, tar, felt paper, etc.) has been removed leaving exposed the wood shell in addition to the wood shell or section thereof being removed.

The term "appropriate" as used in this endorsement shall mean that conduct or action customarily taken or used by similar contractors in the jurisdiction to protect or prevent damage, or that which is customarily done by contractors in the same field under similar circumstances.

…

MSA MJ-007 01-95

37.     Multiple inspections of the courtyard siding showed mold growth on the underlying sheathing and framing. Under the Policy, there is no coverage for "property damage" caused by fungi, including mold, or any loss, cost, or expense to remedy same:

## FUNGUS OR SPORE EXCLUSION

This endorsement modifies insurance provided under the policy.

This insurance does not apply to:

(1) "[P]roperty damage" … caused directly or indirectly, in whole or in part, by:

    a.   Any "fungus" or "spore," including "fungi" or "spores;" or

    b.   Any substance, vapor or gas produced by or arising out of any "fungus," "fungi," "spore," or "spores;" or

    c.   Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus," "fungi," "spore," or "spores;" or

    d.   Actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "fungus" or "spore," including "fungi" or "spores."

Such damage or injury is excluded regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

(2)   Any loss, cost or expense arising out of any:

    a.   Request, demand, order to statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess "fungus," "fungi," "spore," or "spores" or the effects of same (including, but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust).

    b.   Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing "fungus," "fungi," "spore," or "spores" or the effects of same (including, but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust).

(3)   With respect to this endorsement, Exclusion 2.b. – Contractual Liability is replaced by the following:

    b.   "Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include, but not limited to, … "property damage" … to which this endorsement applies.

Additional Definitions:

For the purpose of this endorsement, the following definitions are added:

"Fungus" and/or "fungi" includes, but is not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust.

"Spore" and/or "spores" means any reproductive body produced by or arising out of any "fungus" or "fungi."

MSA GL 0807 (05/02)

# V.
# CONCLUSION AND PRAYER

38.    Paragraphs 1-37 are incorporated herein by reference.

39.     Given that minimal siding work had been performed when the Policy expired, no "property damage" or resulting damage occurred during the Policy's effective term. Additionally, in performing its work under its subcontract with ICI, SLI defectively installed courtyard siding and caused water to penetrate into interior buildings components, allowing mold to spread throughout sheathing and necessitating measures to remedy the damage. The facts and allegations regarding SLI's defective installation of the courtyard siding demonstrably trigger multiple coverage-form exclusions and endorsements that bar coverage for the Arbitration and Subrogation Lawsuit.

40.     Because one or more Policy exclusions or endorsements bar coverage for the claims asserted in the Arbitration and Subrogation Lawsuit, MSA asks the Court for:

    a.  A declaration that the allegation and damages awarded against SLI in the Arbitration are not covered under the Policy and that MSA does not have a duty to defend or indemnify SLI in the Arbitration;

    b.  a declaration that the allegations and claimed damages in the Subrogation Lawsuit are not covered under the Policy and that MSA does not have a duty to defend or indemnify SLI in the Subrogation Lawsuit;

    c.  Court costs; and

    d.  All other relief that the Court deems appropriate.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
McGARR, KAMINSKI & SHIRLEY, L.L.P.

Camille Johnson, attorney-in-charge
State Bar No. 10686600
Southern District Bar No. 16414
6440 N Central Expressway, Suite 107
Dallas, Texas 75206
Tel: (214) 368-1515
Fax: (214) 292-9647
camille@ssjmlaw.com

**Counsel for MSA Insurance Company**

# Exhibit A

## AMERICAN ARBITRATION ASSOCIATION
### Construction Industry Arbitration Tribunal

| | | |
|---|---|---|
| ICI Construction, Inc., | § | |
| | § | |
| Claimant, | § | |
| | § | |
| v. | § | |
| | § | |
| Simpson Kaplan District at Memorial, LLC | § | |
| | § | |
| Respondent, | § | |
| | § | |
| v. | § | |
| | § | |
| Builders First Source - Texas Installed Sales | § | CASE NO. 01-16-0005-0316 |
| Advanced Concrete Surfaces, LLC | § | |
| Edwards Steel Solutions, LLC | § | |
| SLI Framing Company, Inc. | § | |
| R&S Commercial Services LP | § | |
| Sills-Swindell, Inc. | § | |
| Maamech South, LLC | § | |
| f/k/a MA South Mechanical, LLC | § | |
| J&R Landmark Construction Corp. | § | |
| Jose Hernandez; RDZ, Inc. | § | |
| The Hartford Fire Insurance Company | § | |
| Fernando Marquez | § | |
| Juan Torres / MAR Construction | § | |
| Sergio Cazares | § | |
| | § | |
| Third Party Respondents. | § | |

## FINAL AWARD

The undersigned Arbitrator was properly designated and duly appointed by the American Arbitration Association ("AAA"), Construction Arbitration Rules ("Rules") and in accordance with Paragraph 24 of the Construction Contract dated March 25, 2014 ("Contract") between Claimant, ICI Construction, Inc. ("ICI"), and Respondent, Simpson Kaplan District at Memorial, LLC ("SKDM").

The final hearing was held in Houston, Texas beginning on September 4, 2018 and continuing through September 14, 2018 and then resuming December 3, 2018 and concluding on December 5, 2018. Following the conclusion of the final hearing, the Parties submitted extensive briefing including the submission of attorneys' fees affidavits.

The Parties are represented by experienced and able counsel who zealously advocated the positions of their clients. I have considered the evidence, presentations, arguments and briefs presented by all the Parties and make this Award.

### Project Overview

This is a breach of contract case. As noted previously, ICI and SKDM entered into the Contract on March 25, 2014 which required ICI to build the District at Memorial 326 unit multi-family residential complex at 10300 Katy Freeway in Houston, Texas ("Project"). The Project consisted of two buildings of apartments surrounding a seven-story precast parking garage. ICI and SKDM agreed on a $36,696,767.00 Guaranteed Maximum Price ("GMP") to complete the Project with a contractual substantial completion date of October 8, 2015.[1]

SKDM issued Notice to Proceed on April 2, 2014, with a construction start date of April 7, 2014. ICI commenced construction on April 7, 2014. The contract required ICI to achieve Substantial Completion 30 days prior to Final Completion.

During the Project, ICI and SKDM executed four (4) change orders (Change Orders 8, 9, 11 and 18) that adjusted Substantial Completion to January 31, 2016 and increased the final GMP to $38,076,258.87.

ICI received the Temporary Certificates of Occupancy ("TCO's") for Building 1 and the Parking Garage on January 29, 2016, for Building 2 on June 20, 2016 and the Pool Operating

---

[1] The Contract is unclear about the exact time for Project duration. For the purposes of this Final Award I accept that the original duration, i.e., before change orders, called for Substantial Completion on or before October 8, 2015.

Permit on June 28, 2016.   Final Certificates of Occupancy for all three parts of the Project (Building 1, and the Garage) were issued on August 9, 2016.

SKDM issued and signed the Certificate of Substantial Completion for the entire Project on September 9, 2016.

ICI terminated the Contract on October 2016 alleging non-payment by SKDM and on the same day filed both its Mechanic's and Materialman's Lien in the amount of $4,001,403.58 and its Original Petition in the District Court of Harris County.

Subsequently, SKDM took over all aspects of the Project including construction, supervision and remediation efforts.  The Project ultimately achieved final completion.

### Parties' Claims

### ICI

ICI claims that it is owed $2,185,823.00, after credits and offsets, by SKDM for its work under the Contract.  In essence, ICI argues (1) that it achieved early Substantial Completion of Building No. 1 and the Parking Garage and (2) that, but for the interference by SKDM, it would have achieved timely Substantial Completion of Building No. 2.

According to ICI, SKDM was not justified in withholding payment from ICI under the Contract because it interfered with ICI's ability to perform its work.  ICI asserts that SKDM repeatedly changed its mind regarding the acceptable standard for paint and texture, repeatedly punched and re-punched portions of the Project adding new items and improperly supplemented ICI and ICI's subcontractors.  These breaches of contract delayed the Substantial Completion of the Project.

Finally, ICI alleges that SKDM's failure to make timely payment and delays were prior to any alleged breach by ICI. Therefore, ICI was excused from further performance under the Contract and ICI was justified in terminating the Contract.

ICI claims damages as follows:

| | |
|---|---|
| Pay Application No. 24 | $  104,479.00 |
| Pay Application No. 25 | $  933,333.00 |
| Pay Application No. 26 | $2,964,071.00 |
| Legal Costs | $  675,810.50 |
| Interest | 1.5% per month from |
| | October 19, 2016 |
| Subtotal | $4, 677,693.50 |
| (Owner Payments to ICI's Subcontractors) | ($1,816,060.00) |

**TOTAL OF ICI'S DAMAGES          $2,861,633.50 plus interest**

## SKDM

In response, SKDM claims that ICI's termination of the Contract was unjustified and itself a breach. In fact, argues SKDM, the Contract expressly allows it to withhold payments because of ICI's numerous breaches including its failure to timely complete the Project, the lost rentals resulting from late completion and the enormous amount of damages due to defective and incomplete work including over $2.2 million that SKDM spent to replace all of the siding and most of the windows in the interior courtyards.

SKDM seeks an award of the following damages:

| | |
|---|---|
| Completion and Defect Remediation Costs - | $ 3,547,056.00 |
| Delay Costs - | $ 2,356,131.00 |
| Indemnity Bond - | $    120,042.00 |
| Insurance Reimbursements - | ($    742,219.00) |
| Legal Costs - | $ 1,884.718.41 |
| Interest (through January 7, 2019) - | $    264,710.80 |
| Subtotal | $ 7,430,439.21 |
| Remaining Contract Balance - | $ (2,204,598.00) |

**TOTAL OF SKDM'S DAMAGES -          $ 5,225,841.21**

**Subcontractors**

The following is a list of the subcontractors and their involvement in the case:

**Subcontractors joined and date of joinder**

1. Builders First Source – Texas Installed Sales (9/15/17 R7 Order)
2. Advanced Concrete Surfaces, LLC (9/15/17 R7 Order)
3. Edwards Steel Solutions, LLC (9/15/17 R7 Order)
4. SLI Framing Company (9/15/17 R7 Order)
5. R&S Commercial Services LP (9/15/17 R7 Order)
6. Schaffer Mechanical, Inc. (9/15/17 R7 Order)
7. Sills-Swindell, Inc. (9/15/17 R7 Order)
8. Maamech South, LLC f/k/a MA South Mechanical, LLC (9/15/17 R7 Order)
9. J&R Landmark Construction Corp. (9/15/17 R7 Order)
10. Cornerstone Security (9/15/17 R7 Order)
11. NGM Insurance Company (9/15/17 R7 Order)
12. Jose H. RDZ, Inc. (1/18/18 R7 Order and sustained per 3/20/18 R7 Order)
13. Fernando Marquez (6/28/18 R7 Order)
14. Juan J. Torres/MAR Construction (6/28/18 R7 Order)
15. Sergio Cazares (6/28/18 R7 Order)
16. The Hartford (1/3/18 AAA Email – was represented by Claimant counsel at time)

**Subcontractors dismissed and date dismissed**

1. NGM Insurance Company (11/20/18)
2. Schaffer Mechanical, Inc. (11/20/18)
3. Cornerstone Security (2/19/19)

**Subcontractors who have failed to appear and participate after due notice per the AAA Rules.**

1. Maamech South, LLC f/k/a MA South Mechanical, LLC
2. Fernando Marquez
3. Juan J. Torres/MAR Construction
4. Sergio Cazares

## Ruling

**Contract Completion and Delay**

Under the Contract, ICI had the duties, among others, to (1) "perform the Work in an expeditious and economical manner consistent with [SKDM's] interest" Section 3 (a) and (2) "diligently prosecute the Work . . . and achieve 'Substantial Completion' of the entire Work not

later than Four Hundred Eighty Seven (487) days following the commencement date . . ." Section 7.

ICI takes the position that it achieved Substantial Completion as required by the Contract. SKDM disagrees.

Based upon the greater weight of the credible evidence, I find that ICI achieved Substantial Completion of, if not the entire Project, at least Building No. 1 and the Parking Garage by January 31, 2016, the contractual Substantial Completion date, and that by so doing ICI met its obligations under the Contract.

As it pertains to the term Substantial Completion, the Contract is no model of clarity.

Section 7 says that "'Substantial Completion', as used herein, shall mean the completion of the Work in accordance with the Contract Documents, subject to certain minor finishing items or adjustments being required to be made by Contractor, so that the Owner can occupy or utilize the Work for its intended use, and provided further that Contractor has obtained and delivered to Owner all permits and other consents from all governmental authorities, if any, that are required with respect to the Work." Ex. 001

Section 7 is then followed later in the Contract by Exhibit E.11 which states:

> **"SUBSTANTIAL COMPLETION**:  The date upon which the building, or a designated portion of the building, is sufficiently complete, in accordance with the construction contract documents, so that Owner may use or occupy the building or designated portion thereof, for the intended use for which it is originally designed.  Upon occupancy of the building (or designated portion thereof), Owner assumes responsibility for insurance and utility costs for the occupied premises." Ex. 001

Under Texas law when interpreting a contract, a court (or arbitration panel) must look at the entire document in an effort to harmonize and give effect to all provisions of the contract.  In

so harmonizing all the provisions of a contract the law requires the court to, among other things, (1) look at the conduct of the parties in determining how they interpreted a contract provision and (2) take a practical approach in discerning the business purpose of a provision. Using that analysis, I find that the Contract required that only a designated portion of the Project had to be Substantially Completed by the contractual deadline. First, that appears to be the way the parties saw it. It is undisputed that on February 3, 2016 the architect for the Project, Humphreys and Partners ("HPA"), sent SKDM an AIA G704 Certificate of Substantial Completion form for execution by all parties designating the Clubhouse and Fitness Center, Building 1 and the Parking Garage as a "portion of the Project designated for partial occupancy of use." Ex. 106 Ultimately that form wasn't forwarded to ICI or signed by anybody for reasons other than its applicability. But if Substantial Completion is triggered only in reference to the "entire" Project, rendering Exhibit E.11 at least partly meaningless, why would HPA and SKDM even consider issuing a Certificate of Substantial Completion for a designated portion of the Project? It is also undisputed that ICI received TCO's for Building 1 and the Parking Garage 2 days before the contractual completion date. Moreover, from a practical standpoint the greater weight of the credible evidence showed that the completion of the units always remained ahead of the rental market, an eventuality the parties probably expected at the time of Contract signing thereby making Substantial Completion of the "entire" Project unnecessary. And the fact of the matter is that by the end of January, 2016 according to two of SKDM's independent consultants, HPA and Marx-Okubo, the "entire" Project was anywhere from 91% to 98% complete. So, at least by the deadline in the Contract, the entire Project was either Substantially Complete or close to it. Finally, the greater weight of the credible evidence showed that SKDM specifically ordered ICI to prioritize completing Building 1 over Building 2, which could reasonably account for the work on Building 2 that was not completed by

the end of January, 2016 and lends credence to the argument that the Parties intended that the Substantial Completion of Building 1 and the Parking Garage would fulfill ICI's obligation under the Contract.

Besides, in this case ICI is not seeking delay damages, e.g., extended jobsite overhead or other types of costs incurred by a contractor who stays on the job longer than expected. It is suing only for what it claims remains unpaid under the Contract. On the other hand, SKDM does allege that ICI delayed completion, breached the Contract and damaged SKDM in the amount of $2,356,131.00 in lost rentals.

As noted previously, I find that ICI did not breach the Contract by delaying Substantial Completion. But even if it did, after balancing the credibility of the various witnesses and based on the preponderance of the credible evidence, I find that SKDM did not carry its burden that ICI was the sole cause of delay or that SKDM was ever actually damaged.

As I understand it, SKDM's lost rentals delay analysis used a total time approach, i.e., every day of delay on the Project after January 31, 2016 was caused by ICI. As the Parties know better than I, the record is replete with accusations and counter-accusations supported by documentation and testimony of various delays allegedly resulting from, according to ICI, SKDM's multiple punch lists, multiple  inspectors and changing quality standards regarding interior finishes and, according to SKDM, shoddy work by ICI that needed to be redone, late performance by various subcontractors, conflicting paint specifications regarding a Primer coat and poor scheduling by ICI of its subcontractors.

No expert offered any analysis of the criticality of the various delayed activities or any apportionment of blame among SKDM, ICI, the designers and others. I understand SKDM's argument that there can be no analysis of criticality because everything is critical after the

Substantial Completion deadline has passed. First, I don't necessarily agree with that proposition in all cases. But more importantly, it seems reasonable that before an award of over $2.2 million in lost rentals due to delay is issued, some methodical and systematic analysis of responsibility would be appropriate.

In any event, the argument by SKDM (unsupported by any Texas case law) is that it fulfilled its burden of proof simply by showing that the Final Certificate of Substantial Completion was not signed until September 9, 2016. The burden then shifted to ICI, according to SKDM, to prove a negative, i.e., that it didn't delay the Project. The fact of the matter is that ICI has produced credible evidence proving that SKDM, not ICI, significantly delayed completion of ICI's work. In support, I need look no further than Tucker Lynch's April 30, 2016 internal email, ex. 209, in which he identified numerous SKDM caused delays that continued to occur for, at least, three months after the contractual Substantial Completion deadline. Many of the delays referenced in Mr. Lynch's email message were corroborated by SKDM internal memos, Project documentation, letters and credible testimony by Bart Cobb, Dennis Cudd and Jerry Ibarra.

Finally, as noted previously the preponderance of the credible evidence proved that the number of units available for leasing always exceeded demands of the rental market. ICI's Demonstrative Exhibit 8, Ex. 174. I have considered the testimony of Messrs. Helmer and Bailey and the evidence they relied on. In the final analysis and based on the greater weight of the evidence, however, I find that without more objective data such as direct testimony from prospective apartment renters or evidence of move-outs, etc., taken as a whole their testimony does not meet the reasonable certainty test. *Phillips v. Carlton Energy Grp. LLC.*, 475 S.W.3d 265, 279 (Tex. 2015) ("As a minimum, opinions or estimates of lost profits must be based on objective facts, figures or data from which the amount of lost profits can be ascertained.")

**Remediation and Completion Costs**

**Siding Replacement**

SKDM claims that following ICI's termination of the Contract in October 2016 it incurred reasonable and necessary costs in the amount of $3,547,056.00 to remediate defective work and complete the Project.

As to remediation costs, I heard testimony from experts retained by SKDM, ICI, SLI Framing Company, Inc. ("SLI"), and others. These clearly well qualified and credible experts gave detailed and well supported opinions on the reasonable and necessary costs for remediation. Far and away the biggest expense was for replacing the siding in the interior courtyards. The opinions of reasonable and necessary costs ranged from $2,422,075.00 (SKDM) to $375,000.00 (ICI).

There is little debate that the siding had to be replaced, at least in part. Moisture intrusion and mold growth in the sheathing and studs demanded such extreme measures. The ultimate question is what should the reasonable and necessary scope and cost of repair be?

SKDM replaced all the siding, sheathing and windows in the courtyards. To the extent that SKDM upgraded the material used, it credited the final amount being sought for the betterment cost.

SLI's experts, Mr. Warren French and Ronald Killion, disagreed that complete removal and replacement of all sheathing, Tyvex, windows and siding was necessary. They opined that while all the siding should be removed, only 30% of the sheathing and 61 courtyard windows should be replaced. Based on those assumptions, they estimated a siding remediation cost of $1,063,199.38. I agree and adopt the calculations of the SLI experts as best meeting the test of awarding only reasonable and necessary costs.

Because the vast majority of the siding deficiencies were caused by installation problems as opposed to poor supervision, as between SLI and its sub-contractor, Jose H. RDZ, Inc. ("RDZ"), I assign the percentage of fault as follows:

RDZ – 85%

SLI – 15%

**Remaining Remediation and Completion Costs**

Amended Exhibit 2 found on pages 8 and 9 of the Veritas August 17, 2018 letter, Ex. 753 sets out SKDM's completion, supplementation and remediation costs.   Based on the preponderance of the credible evidence the following is my ruling on both the amount and allocation of those costs.

1.     **General Conditions (Exhibit 2.1)**

I find that 33.3% mark-up for General Conditions is too high and will use 10%.

2.     **Drew Abernathy's Time (Exhibit 2.1.1)**

Based on my previous rulings, I find that SKDM take nothing for Drew Abernathy's time.

3.     **Cleanup (Exhibit 2.2)**

I award SKDM $24,204.00 for cleanup costs, which should be split evenly between R&S Commercial Services, LP ("R&S") and Sills-Swindell, Inc. ("Sills").

4.     **Pool Planters (Exhibit 2.3)**

I award SKDM $55,233.20 for costs to repair the pool painters.  No subcontractor was identified.

5.     **Pool Problems (Exhibit 2.4)**

I award SKDM $18,873.80 for pool problems.  No subcontractor was identified.

6.    **Corridor Floors/Doors (Exhibit 2.5)**

I find that SKDM take nothing on corridor floors and doors.

7.    **Mailroom CMU Walls (Exhibit 2.6)**

I find that SKDM take nothing for the mailroom CMU walls.

8.    **Hardware Replacement (Exhibit 2.7)**

I award SKDM $28,032.40 for door hardware replacement.  The responsible subcontractor is Builders First Source – Texas Installed Sales, LP ("BFS").

9.    **Landscape Repairs (Exhibit 2.8)**

I award SKDM $2,994.20 in landscape repair of sprinkler heads.  No subcontractor was identified.

10.    **Pool Bathroom/Pool Area Upgrade (Exhibit 2.9)**

I find that SKDM take nothing for pool bathroom and pool area upgrades.

11.    **Siding (Amended Exhibit 2.10)**

As referenced previously, I award SKDM $1,063,199.38 for siding replacement. The responsible subcontractors are SLI and RDZ with a split of 15% to SLI and 85% to RDZ.

12.    **5th-7th Floor Stairs and Stair Railing-Painting (Exhibits 2.12 and 2.13)**

I award SKDM $3,995.20 for painting the 5th-7th floor stairs and $19,524.40 to paint stair railings for a total of $23,519.60.  The responsible subcontractor is R&S.

13.    **Plumbing Flood Leaks (Exhibit 2.16)**

I award SKDM $259,961.90 for plumbing repairs.  The responsible subcontractor is Mech South LLC ("MAA").[2]

---

[2] The record is not clear about whether and how much any insurance recovery for plumbing repairs might be. However, SKDM's recovery of this item is subject to such recovery.

14.   **Sprinkler Head Paint (Exhibit 2.17)**

I award SKDM $26,498.70 for removal of sprinkle-head paint.  The responsible subcontractor is R&S.

15.   **Sign Repairs (Exhibit 2.18)**

I award SKDM $1,000.00 for cost to fix sign errors.  The responsible party is Cornerstone. With Cornerstone's dismissal, there is no subcontractor identified.

16.   **Garage Cleaning (Exhibit 2.19)**

I award SKDM $10,703.00 for cleaning costs related to the parking garage.  No subcontractor was identified.

17.   **Garage Entry Repair Work (Exhibit 2.20)**

I award SKDM $10,506.70 for remediation of concrete finish in the parking garage entry.  No subcontractor was identified.

18.   **Repair Garage Doors (Exhibit 2.21)**

I award SKDM $37,042.50 for repairs and painting parking garage doors.  The responsible contractors are Advanced Concrete Surfaces, LLC ("ACS") and R&S. The allocation for such amount is 75% for ACS and 25% for R&S.

19.   **Dog Park and Putting Green (Exhibit 2.22)**

I find that SKDM take nothing for upgrades to dog park and putting green, patio extension and door repair to the leasing office.

20.   **Paint Inspections and Repairs (Amended Exhibit 2.23)**

I find that SKDM take nothing for paint inspections and repairs.

21.   **Deficient Grills and Gates (Exhibit 2.24)**

I award SKDM $7,145.60 for completing deficient grill installation and gate closure adjustments.  The responsible subcontractor is Edwards Steel Solutions, LLC.

22.     **Sprinkler Main Leak (Exhibit 2.25)**

I award SKDM $13,366.10 for repairs to sprinkler lines.  No subcontractor was identified.

23.     **Repair of Electrical Work (Exhibit 2.26)**

I award SKDM $2,938.00 for repair of deficient electrical work.  No subcontractor was identified.

24.     **Warranty Work (Exhibit 2.27)**

I award SKDM $4,642.00 for warranty work.  No subcontractor has been identified.

25.     **Punch list Completion Work (Amended Exhibit 2.28)**

I award SKDM $75,000.00 for completion of punch list work which should be split evenly between R&S and Sills.

26.     **Repair of Water Damage from Plumbing (Exhibit 2.29)**

I award SKDM $78,274.00 for repair of water damage from plumbing and threshold leaks.  The responsible subcontractor is MAA.[3]

27.     **Awning Canopy Investigation (Exhibit 2.30)**

I award SKDM $62,459.00 for investigation of canopy/awning defects.   No subcontractor has been identified.

_____

[3] See Footnote 2.

**Disposition of Subcontractors' Claims**

The subcontracts that ICI entered into with its Subcontractors contained contingent payment clauses making ICI's receipt of payment from SKDM a condition precedent to any obligation of ICI to pay the Subcontractors.  The evidence demonstrated that SKDM's refusal to pay ICI was alleged to be due to the work of each of the Subcontractors.   Accordingly, the contingent payment clauses that formed the basis for ICI's non-payment to the Subcontractors are valid and enforceable and ICI's non-payment to the Subcontractors was justified.  For this reason, the Subcontractors are not entitled to recover any attorney's fees or expenses from ICI or the Surety as such amounts are not yet due under the Subcontracts.

Further, the Subcontracts contain indemnity language making the Subcontractors liable to ICI for any "attorney's fees, expert/consultant fees, settlement costs and reasonable expenses".

The subcontractors who have claims for unpaid contract amounts are:

1.      BFS - $167,163.64
2.      ACS - $160,186.76
3.      SLI - $201,606.65
4.      R&S - $65,760.50

I award the above subcontractors the remaining amounts owing under their subcontracts, subject to offset as stated in this Final Award.

**SKDM's Bond Claim**

SKDM's notice was not sufficient to trigger any obligation of the Surety to take any action under the performance bond.  In fact, the only Notice sent to Hartford stated that SKDM was not calling on the Performance Bond.  Pursuant to Chapter 53 of the Texas Property Code SKDM is responsible for the reasonable and necessary attorney's fees Hartford incurred to defend itself.

**ICI's Lien and SKDM's Indemnity Bond Cost**

ICI recorded an affidavit claiming constitutional and statutory liens (the "Lien") against the Project.  The Lien was originally recorded in the amount of $4,001,883.00, the unpaid GMP balance.  However, during the pendency of this proceeding, SKDM paid several of ICI's subcontractors their unpaid subcontract balances totaling $1,816,060.00.  After SKDM provided ICI with evidence of such payments, ICI reduced the Lien to $2,185,823.00, the amount stated above.  I hereby find that ICI's Lien in the amount of $2,185,823.00 is valid.

Since ICI's Lien is valid, as stated above, SKDM is not entitled to recover any indemnity bond premiums.

**Award Regarding Attorneys' Fees and AAA Costs**

The attorneys for the Parties in this difficult and complex case represented their respective clients with outstanding vigor, zeal, competence and professionalism.  In determining an award of attorneys' fees, I have carefully considered the eight factors enumerated in the Texas Disciplinary Rules of Disciplinary Conduct, and adopted by the Supreme Court:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2)     the likelihood … that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the \

services; and

(8)      whether the fee is fixed or contingent on results obtained or uncertainty of

collection before the legal services have been rendered.

Tex. Disciplinary R. Prof. Conduct 1.04, *Arthur Andersen & Co. v. Perry Equip. Corp.*,

945 S.W.2d 812, 818 (Tex. 1997).

While all the listed factors are important and have been taken into consideration, the facts

of this case required me to give particular attention to the balance between (1) "the time and labor

required, the novelty and difficulty of the questions involved, and the skill required to perform the

legal service properly" and (4) "the amount involved and the results obtained."   After such

consideration and attention, (and without prejudice to the validity of any contract for attorney's

fees between any party and its counsel, or the amounts payable thereunder) I award ICI, as the

prevailing party, attorneys' fees against SKDM in the amount of $675,810.50.   Additionally, I

award Hartford $77,924.41 in attorneys' fees against SKDM.

Under Rule R-48 of the Construction Industry Arbitration Rules of the American

Arbitration Association, "(i)n the final award, the arbitrator shall assess fees, expenses, and

compensation as provided in Sections R-55, R-56, and R-57.   The arbitrator may apportion such

fees, expenses, and compensation among the parties in such amounts as the arbitrator determines

is appropriate."   Following the standards set forth in said Rule, I have determined that the

Administrative fees and expenses of the AAA and the compensation and expenses of the Arbitrator

are to be borne as incurred.

### Conclusion

In sum, I make the following Final Award:

1.      On its claim for the Contract balance, ICI is AWARDED $2,185,823.00.

2. On its claim for lost rentals due to delayed completion, SKDM shall TAKE NOTHING.

3. On its claim for the costs incurred in interior courtyard siding remediation and replacement SKDM is AWARDED the difference between $1,063,199.38 and $742,219.00 (insurance proceeds) which equals $320,980.38.

4. On its claim for the remaining costs of remediation and completion, SKDM is AWARDED $742,376.70.

5. On their claims for the subcontract balance, the unpaid subcontractors are AWARDED from ICI as follows, minus offsets as noted above[4]:

   a. BFS - $167,163.64
   b. ACS - $160,186.76
   c. SLI - $201,606.65
   d. R&S - $65,760.50

6. On its claim for attorneys' fees as prevailing party, ICI is AWARDED from SKDM the sum of  $675,810.50.

7. On its claim for attorneys' fees, Hartford is AWARDED from SKDM the sum of $77,924.41.

8. On its claim for attorneys' fees, SKDM shall TAKE NOTHING.

9. On its claim on the Hartford bond, SKDM shall TAKE NOTHING.

10. On their claims for attorneys' fees, the subcontractors shall TAKE NOTHING.

11. Therefore, SKDM shall pay ICI $1,818,028.52 and Hartford $77,924.41.

ICI is awarded prejudgment interest on the above net sum, i.e., excluding attorneys' fees, from the date of filing (October 19, 2016) through the date of the Final Award at the rate of 6%

---

[4] After full offsets ICI will recover the difference between the costs of remediation, as noted above, and the unpaid contract balance from R&S and SLI. SLI will then have a claim over against RDZ for the net amount, after insurance recovery for the siding remediation.

per annum.  If the amount awarded is not fully paid within thirty (30) days, statutory post-judgment interest will begin to accrue on the final award including attorneys' fees.

This Award disposes of all claims and counterclaims against all parties in this matter, and is a Final Award.  Any claims or counterclaims not expressly granted herein are hereby denied.

Signed this 25th day of March, 2019.

George E. Bowles, Arbitrator

Exhibit B

POLICY NUMBER: MOJ01050

IL DS 00 09 07

# COMMON POLICY DECLARATIONS

| | |
|---|---|
| MSA Insurance Company<br>4601 Touchton Road East, Suite 3400<br>Jacksonville, FL 32245 | Milton O. Johnston and Company, Ltd.<br><br>Houston,  TX 77068<br>17584 |

| | |
|---|---|
| NAMED INSURED: | SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc. |
| MAILING ADDRESS: | 1500 Marina Bay Drive #3555 |
| | Kemah, TX 77565 |

POLICY PERIOD:   FROM   02/16/2014   TO   02/16/2015   AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

| BUSINESS DESCRIPTION | Carpentry Contractor - Erecting the framing for buildings and apartments. |
|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
|---|---|
| | PREMIUM |
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ _____ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ _____ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ ████████ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ _____ |
| COMMERCIAL LIABILITY UMBRELLA | $ _____ |
| COMMERCIAL PROPERTY COVERAGE PART | $ _____ |
| CRIME AND FIDELITY COVERAGE PART | $ _____ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ _____ |
| EQUIPMENT BREAKDOWN COVERAGE PART | $ _____ |
| FARM COVERAGE PART | $ _____ |
| LIQUOR LIABILITY COVERAGE PART | $ _____ |
| POLLUTION LIABILITY COVERAGE PART | $ _____ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ _____ |

Policy Fee ██████   Tax ██████   Stamping Tax ██████   $ ████████

TOTAL: $ ████████

Premium shown is payable:   $ ██████ at inception.   $ ██████

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): |
|---|
| See ILDS Supplement |
| |
| |
| |
| |
| |
| |

| Countersigned: 02/11/2014 | By: *Gy D. Johnston* |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSE-WHERE AT THE COMPANY'S OPTION.

# MSA Insurance Company

**4601 Touchton Road East, Suite 3400**
**Jacksonville, FL 32245**

**888-239-7872**

**IMPORTANT NOTICE**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P. O. Box 149104

Austin, Texas 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the (Agent) (Company) (Agent or the Company) first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOU POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104

Austin, Texas 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el (Agente) (La Compania) (Agente o la Compania) primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

MSA 10 02TX (05/05)

~max0005.TMP

# MSA Insurance Company

## IMPORTANT NOTICE TO POLICYHOLDER

**This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85% percent tax on gross premium.**

**MSA  10 03TX (04-01-09)**

**FORMS APPLICABLE TO ALL COVERAGE PARTS**

| | |
|---|---|
| IL DS 00 (09 07) | COMMON POLICY DECLARATIONS |
| MSA 10-02-TX (05-05) | Important Notice to Texas Policyholders |
| MSA 10-03-TX (05-05) | Texas Surplus Lines Disclosure |
| IL DS Supplement | IL DS Supplement - |
| NGM Signature Clause | NGM Signature Clause |
| MSA AL 21 02 (1-02) | Delete-Non Renewal Notice |
| CL150 (05/10) | CL150 CGL Coverage Part Declarations |
| CG 24 04 (10-93) | Waiver of Subrogation |
| CG 20 37 (10-01) | Add'l Insured-Contractors-Comp Ops |
| MSA MJ-005 (1-95) | MJ-005 (1-95)  Deductible Liability Endt |
| CG 20 33 MJ (8-07) | Add'l Insured-Owners, Lessees or Contractors |
| CGX 25 03 (08-2011) | Designated Construciton Projects Gen Agg Limit |
| MSA MJ-CGL-001D 01/09 | Contract Labor |
| MSA EIFS 01 (8-03) | EFIS Exclusion |
| MSA AL 2912 AR MJ 01/09 | General Excl Endt |
| CG 21 36 (1-96) | Exclusion New Entities |
| MSA SC-9 (08- 05) | Service of Suit Clause |
| GL0807 (05-02) | Fungus or Spore Exclusion |
| MSA SC-14 | Amendment Policy Conditions |
| MSA AL 21 07 (2-94) | Assault & Battery Exclusion |
| MSA AL 21 08 (2-97) | Lead Contamination Exclusion |
| CG 21 16 (07-98) | Professional Liability Excl. |
| CG 22 34 (10-93) | Contruction Management E&O Excl. |
| WML-3407 (3-05) | Excl-Construction Professional Liab |
| CG 02 05 12 04 | Texas Changes Amendment of Cancellation |
| MSA MJ-16 (8-96) | MJ-16 (8-96) Subcontractors Warranty Endt |
| MSA MJ-007 (1-95) | MJ-007 (1-95) Roofing Operations Exclusion |
| MSA SL-6 (02 98) | SL-6 (02 98) Excl-Classification Limitation Endt |
| MSA SL-70 (05-2009) | SL-70 (05-2009) Total Pollution Exclusion Endorsement |
| CG 21 69 (01-02) | War or Terrorism Exclusion |
| CG 21 47 (10-93) | Employment Related Practices Excl. |
| CG 00 57 (9-99) | Amendment - Known Injury or Damage |
| CG 00 01 (01 96) | Commercial General Liability Occurrence Form |
| IL 00-17 (11-98) | Common Policy Conditions |
| IL 00-21-04-98 | Nuclear Energy Liability Exclusion Endorsement |
| MSA MJ-002 (8-96) | MJ-002 (8-96) Minimum Policy Premium |
| APN00220108 | Agent Broker Compensation Notice  Edited.pdf |
| IL 002 01 08 | IL 002  01 08 - NOTICE OF TERRORISM Selection Rejection |

IL DS 00 08 08  Supplement

**MSA Insurance Company**

**4601 Touchton Road East, Suite 3400**
**Jacksonville, FL 32246**
**(800) 207-0457**

**MSA Insurance Company is a stock insurance company with headquarters located at:**

> **4601 Touchton Road East, Suite 3400**
> **P.O. Box 16000**
> **Jacksonville, FL 32246-6000**
> **Telephone:  1-800-207-0457**

**Bruce R. Fox**
**Secretary**

**Thomas M. Van Berkel**
**President**

**64-8377 (4/12)**

This endorsement is EFFECTIVE 02/16/2014          and made part of Policy Number: MOJ01050

Issued to: SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Delete-Nonrenewal Notice

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM

The following change is made:

> It is agreed under SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS,
> paragraph 9. When we Do Not Renew, is deleted in its entirety.

MSA AL 2102 (01/02)

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

**Insured:** SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.　　Effective Date: 02/16/2014　　　　,**

**Policy No.-** MOJ01050　　　　　　　　　　　　　　　12:01 A.M., Standard Time

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000.00 |
| Products--Completed Operations Aggregate Limit | $ 2,000,000.00 |
| Personal and Advertising Injury Limit | $ 1,000,000.00 |
| Each Occurrence Limit | $ 1,000,000.00 |
| Fire Damage Limit | $ 50,000.00　Any One Fire |
| Medical Expense Limit | $ 1,000.00　Any one Person |

### Retroactive Date (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: None

(Enter Date or "None" if no Retroactive Date applies)

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:

☐ Individual　☐ Joint Venture　☐ Partnership　☒ Organization (Other than Partnership or Joint Venture)

Business Description*: Carpentry Contractor - Erecting the framing for buildings and apartments.

Location of All Premises You Own, Rent or Occupy:

1 - 1500 Marina Bay Drive  Kemah  TX  77565

### PREMIUM

| Loc Num | Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1 | Carpentry | 91342 | P | ■ | ■ | ■ | ■ |
| 1 | 33200 - Waiver of Subrogation - Fully Earned | 33200 | | | ■ | ■ | ■ |
| 1 | 36000 - Additional Insured (CG2037) - Fully Earned | 36000 | | | ■ | ■ | ■ |
| 1 | 34001 - Per Project Aggregate - Per Written Contract | 34001 | | | ■ | ■ | ■ |

RATING AND PREMIUM BASIS (PER 1,000)

(S) GROSS SALES　(A) AREA　(M) ADMISSIONS

(P) PAYROLL　(C) TOTAL COST

RATING AND PREMIUM BASIS (EACH)

(U) UNIT

(T) OTHER　　Total Advance Premium　■　■

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

IL DS 009

---

* Information omitted if shown elsewhere in the policy.　　　　** Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD

**CL 150 (Ed. 11-85)**　　Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright Insurance Services Office Inc  1983  1984

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

**Insured:** SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.            Effective Date: 02/16/2014      ,**
**Policy No.-** MOJ01050                                                    12:01 A.M., Standard Time

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000.00 | |
| Products--Completed Operations Aggregate Limit | $ 2,000,000.00 | |
| Personal and Advertising Injury Limit | $ 1,000,000.00 | |
| Each Occurrence Limit | $ 1,000,000.00 | |
| Fire Damage Limit | $ 50,000.00 | Any One Fire |
| Medical Expense Limit | $ 1,000.00 | Any one Person |

## Retroactive Date (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: None

(Enter Date or "None" if no Retroactive Date applies)

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:
☐ Individual     ☐ Joint Venture     ☐ Partnership     ☒ Organization (Other than Partnership or Joint Venture)

Business Description*: Carpentry Contractor - Erecting the framing for buildings and apartments.

Location of All Premises You Own, Rent or Occupy:

## PREMIUM

| Loc Num | Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1 | 35000 - 30 Day Notice of Cancellation (CG-02 05 (12-04) | 35000 | ██ | ██ | ██ | ██ | ██ |
| 1 | 33100 - Additional Insured - CG 2033 - Blanket - Fully Earned | 33100 | ██ | ██ | ██ | ██ | ██ |
| 1 | Contractors - Executive Supervisors or Executive Superintendents | 91580 | P | ██ | ██ | ██ | ██ |
| 1 | Contractors Equipment - excluding automobiles - rented to others with operators | 11207 | S | ██ | ██ | ██ | ██ |

RATING AND PREMIUM BASIS (PER 1,000)
(S) GROSS SALES   (A) AREA   (M) ADMISSIONS
(P) PAYROLL   (C) TOTAL COST

RATING AND PREMIUM BASIS (EACH)
(U) UNIT
(T) OTHER

Total Advance Premium   ██   ██

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

IL DS 009

* Information omitted if shown elsewhere in the policy.          ** Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD

**CL 150 (Ed. 11-85)**    Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright Insurance Services Office Inc  1983  1984

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

**Insured:** SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.       Effective Date: 02/16/2014     ,**
**Policy No.-** MOJ01050                                                    12:01 A.M., Standard Time

## LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000.00 |
| Products--Completed Operations Aggregate Limit | $ 2,000,000.00 |
| Personal and Advertising Injury Limit | $ 1,000,000.00 |
| Each Occurrence Limit | $ 1,000,000.00 |
| Fire Damage Limit | $ 50,000.00   Any One Fire |
| Medical Expense Limit | $ 1,000.00   Any one Person |

## Retroactive Date (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: None

(Enter Date or "None" if no Retroactive Date applies)

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (Other than Partnership or Joint Venture)

Business Description*: Carpentry Contractor - Erecting the framing for buildings and apartments.

Location of All Premises You Own, Rent or Occupy:

## PREMIUM

| Loc Num | Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1 | Carpentry - construction of residential property not exceeding three stories in height | 91340 | P | ███ | ███ | ███ | ███ |
| 1 | Contractors - subcontracted work - in connection with construction, reconstruction, repair or erection of buildings | 91585 | C | ███ | ███ | ███ | ███ |
| | | | | | | | |

RATING AND PREMIUM BASIS (PER 1,000)
(S) GROSS SALES   (A) AREA   (M) ADMISSIONS
(P) PAYROLL    (C) TOTAL COST

RATING AND PREMIUM BASIS (EACH)
(U) UNIT
(T) OTHER     Total Advance Premium   ███    ███

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

IL DS 009

---

* Information omitted if shown elsewhere in the policy.        ** Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD

**CL 150 (Ed. 11-85)**    Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright Insurance Services Office Inc 1983 1984

POLICY NUMBER  MOJ01050

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**NAME OF PERSON OR ORGANIZATION:**

Blanket as required by valid & enforceable written contract

**A.** **Section II - Who Is An Insured** is amended to include as an insured the person or organization shown above for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "Bodily Injury", "Property Damage" or "Personal Injury" and "Advertising Injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf,

In the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these "additional insured(s)" or Insured(s), the following additional exclusions apply:

This insurance does not apply to:

**a.** "Bodily Injury," "Property Damage", "Personal Injury" or "Advertising Injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**(1)** The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, fields orders, change orders of drawings and specifications; or

**(2)** Supervisory, inspection, architectural or engineering activities.

**b.** "Bodily injury", "property damage", "personal injury" or "advertising injury" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

MSA  CG2033MJ (08 07)                                                    PAGE 1 OF 2

    **(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**All other terms, conditions and exclusions still apply to any claim made under this policy, by any insured.**

**Policy Number: MOJ01050**

# CG 20 37 10 01 - ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name of Person or Organization: |
| --- |
| Blanket as required by valid & enforceable written contract |

| Location And Description of Completed Operations: |
| --- |
| |

| Additional Premium: |
| --- |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG 20 37 10 01

POLICY NUMBER: MOJ01050

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:**

Blanket as required by valid & enforceable written contract

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** - COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 10 93          Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER: MOJ01050

**COMMERCIAL GENERAL LIABILITY**
MSA CGX 25 03 08 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Designated Construction Projects:<br>As required by written contract |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION **I**), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION **I**), which can be attributed only to ongoing operations at a single designated construction "project" shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction "project", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction "project" shown in the Schedule above.

However, regardless of the number of designated construction "projects" shown in the schedule above, the most we will pay for all "projects" combined is $5,000,000.

**4.** The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION **I**), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION **I**), which cannot be attributed only to ongoing operations at a single designated construction "project" shown in the Schedule above:

**1.** Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

MSA CGX 25 03 08 11        Copyright, Insurance Services Office, Inc.,  1996        **Page 1 of 2**        ☐

**D.** If the applicable designated construction "project" has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Limits Of Insurance (SECTION **III**) not otherwise modified by this endorsement shall continue to apply as stipulated.

**F.** "Project" means the work for which the Named Insured is responsible as required in a written construction contract between the Named Insured as the contractor or subcontractor and an owner, developer or general contractor.

MSA MJ 005 (01 95)

## DEDUCTIBLE LIABILITY INSURANCE

**This endorsement, effective** 02/16/2014 **at 12:01 a.m. standard time, forms a part of**

**Policy #:** MOJ01050 **Issued to:** SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

**By:** MSA Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
    COMMERCIAL GENERAL LIABILITY COVERAGE PART.
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART.

| Coverage | Amount and Basis of Deductible |
|---|---|
| Bodily Injury Liability and Property Damage Liability Combined | $(  ) per claim |

Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and coverages will be reduced by the amount of such deductible. "Aggregate" limits for such coverages shall not be reduced by the application of such deductible amount.

The deductible amounts stated in the Schedule shall also apply towards the investigation, adjustment and legal expense incurred in the settlement of claims.

The deductible amount stated in the Schedule apply as follows:

    **Per Claim Basis -** the deductible is on a "per claim" basis, the deductible amount applies:

    Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence".

The terms of this insurance, including those with respect to:

    A.   Our right and duty to defend any "suits" seeking those damages; and
    B.   Your duties in the event of an "occurrence", claim, or suit;

apply irrespective of the application of the deductible amount.

We may pay any part or all of the deductible amount to effect settlement of any claim, suit, or related adjustment expense and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

This endorsement is EFFECTIVE 02/16/2014  and made a part of Policy Number: MOJ01050

Issued to:  SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**ASSAULT AND BATTERY EXCLUSION**

It is agreed that this policy does not cover any claims arising out of Assault and Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of you, your employees or volunteers, patrons or any other persons. Claims, accusations or charges of negligent hiring, placement, training or supervision arising from any of the foregoing are not covered. Furthermore, we shall have no obligation to defend you, or any other insured, for any such loss, claim or suit..

_____
Authorized Representative

MSA  AL 2107 02 94

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | INSURED | AGENCY AND CODE | ENDORSEMENT NO. |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | | | |
| MOJ01050 | 02 | 16 | 2014 | 12:01 | SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement excludes "occurrences" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or from the operations of the insured, which result in:

a. "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

b. "Property Damage" arising from any form of lead;

c. "Personal Injury" arising from any form of lead;

d. "Advertising Injury" arising from any form of lead;

e. **Medical Payments** arising from any form of lead;

f. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

g. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

MSA AL 2108 02 97                                        Authorized Representative

Policy Number: MOJ01050                                    MSA AL 2912 AR MJ  01/09
COMMERCIAL LIABILITY COVERAGE
COMMERCIAL LIABILITY UMBRELLA COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY/IES.**
**PLEASE READ IT CAREFULLY**.

## Commercial Liability Coverage Form Changes
## Commercial Liability Umbrella Coverage Form Changes

# General Exclusion Endorsement

In consideration of the premium charged, it is agreed the following exclusions are made a part of this policy:

**ASBESTOS EXCLUSION**

It is agreed this policy does not apply to any "Bodily Injury", "Property Damage" or "Personal Injury" arising out of or resulting from Asbestos.

It is further agreed we shall have no obligation to defend or indemnify any insured for such loss, claim or suit.

**PUNITIVE DAMAGES EXCLUSION**

It is agreed this policy excludes any claim for punitive or exemplary damages whether arising out of acts of any insured, insured's employees, subcontractors or any other person.  Punitive Damages is defined as "Those damages imposed to punish a wrongdoer and to deter others from similar conduct.  Punitive damages expressly includes but is not limited to reckless or indifferent behavior or reckless acts or omissions"

**COMMUNICABLE DISEASE EXCLUSION**

It is agreed this policy does not apply to "Bodily Injury", "Property Damage" or "Personal Injury" or "Advertising Injury" arising out of an affliction with a communicable disease or related virus. Communicable disease, treatment and testing associated with related viruses includes, but is not limited to, one or more of the following:

    Acquired Immune Deficiency Syndrome (AIDS)
    Human Immunodeficiency Virus (HIV)
    Hepatitis

It is further agreed we shall have no obligation to defend or indemnify any insured for such loss, claim or suit.

**Page 1 of 3**

MSA AL 2912 AR MJ  01/09

Policy Number:   MOJ01050                                    MSA AL 2912 AR MJ  01/09

COMMERCIAL LIABILITY COVERAGE
COMMERCIAL LIABILITY UMBRELLA COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY/IES.
PLEASE READ IT CAREFULLY**.


## SUBSIDENCE EXCLUSION

It is agreed this policy shall not apply to any claim of liability for "Bodily Injury," "Property Damage" or "Personal Injury" caused by, resulting from, attributable or contributed to, or aggravated by the movement, rise, expansion and/or subsidence of land as a result of land slide, mud flow, earth sinking or shifting, water release and/or seepage resulting from or arising in whole or in part out of your operations or your subcontractor's operations.

It is further agreed we shall have no obligation to defend or indemnify any insured for such loss, claim or suit.


## SILICA EXCLUSION

It is agreed the coverage afforded by this policy does not apply to "Bodily Injury", "Property Damage" or "Personal Injury" arising out of:

1. Inhaling, ingesting or prolonged physical exposure to silica or goods or products containing silica; or
2. The use of silica in sandblasting operations; or
3. The use of silica to clean or renovate any structure or object; or
4. The manufacture, transportation, storage or disposal of silica or goods or products containing silica.

It is further agreed we shall have no obligation to defend or indemnify any insured for such loss, claim or suit.

## CHROMATED COPPER ARSENATE TREATED WOOD

It is agreed this policy does not apply to any "Bodily Injury", "Property Damage" or "Personal Injury" arising out of or resulting from chromate copper arsenate treated wood.

It is further agreed we shall have no obligation to defend or indemnify any insured for such loss, claim or suit.


**Page 2 of 3**

Policy Number: MOJ01050                                    MSA  AL 2912 AR MJ  01/09

COMMERCIAL LIABILITY COVERAGE
COMMERCIAL LIABILITY UMBRELLA COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY/IES.**
**PLEASE READ IT CAREFULLY**.

## CROSS SUITS EXCLUSION

This policy does not cover any claim or any lawsuit by any insured against any other insured.   This exclusion does not apply to a claim or lawsuit by an additional insured named via endorsement against the named insured.

## DEFENSE OBLIGATION

Our determination regarding a defense obligation under this policy may be made on evidence or information extrinsic to any complaint or pleading presented to us. The Company has the right to select counsel to defend you or any other insured that is entitled to a defense under this policy.  In the event that you or any insured or indemnitee are entitled by law to select independent counsel to defend you or any insured at the Company's expense and you/any insured elect(s) to select such counsel, the attorneys' fees and all other litigation expenses we must pay are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims in the community where the claim arose or is being defended.

This policy does not apply to any claim or suit for fraud, breach of warranty, breach of contract or any alleged damages arising there from, including but not limited to interest, penalties, warranty work repairs, or attorneys' fees.

This policy does not cover an award of attorneys' fees.  Attorneys' fees are not considered damages any insured is "legally obligated to pay" for purposes of this policy, regardless of the cause of action for which they are sought or awarded.

**Page 3 of 3**

CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" ex-pected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

         (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

Copyright, Insurance Services Office, Inc., 1994

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

  **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

    **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

    **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

  **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

Copyright, Insurance Services Office, Inc., 1994

CL 182 (1-96)
CG 00 01 01 96

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

   **(a)** Less than 26 feet long; and

   **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i.   War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.   Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing opera-tions, if the "property damage" arises out

of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous

Copyright, Insurance Services Office, Inc., 1994

condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to:

      (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

      (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

      but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions.**

   This insurance does not apply to:

   a. "Personal injury" or "advertising injury":

      (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

      (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

      (3) Arising out of the willful violation of a

penal statute or ordinance committed by or with the consent of the insured;

      (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

      (5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   b. "Advertising injury" arising out of:

      (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

      (2) The failure of goods, products or services to conform with advertised quality or performance;

      (3) The wrong description of the price of goods, products or services; or

      (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

   c. Any loss, cost or expense arising out of any:

      (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

      (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**COVERAGE C. MEDICAL PAYMENTS**

1. **Insuring Agreement.**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the

Copyright, Insurance Services Office, Inc., 1994

CL 182 (1-96)
CG 00 01 01 96

accident; and

   **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard."

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit."

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

     **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

     **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

     **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provides us with written authorization to:

     **(a)** Obtain records and other information related to the "suit"; and

     **(b)** Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee,

necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **2.b.(2)** of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damages" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgements or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing

duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form,

Copyright, Insurance Services Office, Inc., 1994

other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to **5.** above, the Fire Damage Limit is the most we will pay under Coverage A for damages

because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be

liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all

those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Copyright, Insurance Services Office, Inc., 1994

CL 182 (1-96)
CG 00 01 01 96

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in **a.**

above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily

Copyright, Insurance Services Office, Inc., 1994

injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

Copyright, Insurance Services Office, Inc., 1994
CL 182 (1-96)
CG 00 00 01 96

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) You;

    (2) Others trading under your name; or

    (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 00 57 09 99

# AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Paragraph 1. Insuring Agreement of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverage A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period, and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage", or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: MOJ01050

**COMMERCIAL GENERAL LIABILITY**
**CG 02 05 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – AMENDMENT OF CANCELLATION PROVISIONS OR COVERAGE CHANGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

In the event of cancellation the insurance afforded by this coverage part,  we agree to mail prior written notice of cancellation to:

**SCHEDULE**

| | | |
|---|---|---|
| **1.** | **Name:** | Blanket, as Required by Valid and Enforceable Written Contract |
| **2.** | **Address:** | |
| **3.** | **Number of days advance notice:** 30 | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

POLICY NUMBER: MOJ01050

COMMERCIAL GENERAL LIABILITY
CG 21 16 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION -- DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Description of Professional Services:**

**1.**

**2.**

**3.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusion of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

this insurance does not apply to 'bodily injury", "property damage" or "personal and advertising injury" due to the rendering or failure to render any professional service.

CG 21 16 07 98          Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: MOJ01050

COMMERCIAL GENERAL LIABILITY
CG 21 36 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Paragraph 4. of WHO IS AN INSURED (Section II) does not apply.

       Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CG 21 47 10 93

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employ-ment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, dis-cipline, defamation, harassment, humilia-tion or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employ-ment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, dis-cipline, defamation, harassment, humilia-tion or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

ISO Properties, Inc., 2001

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** Exclusion **h.** under Paragraph **2.**, **Exclusions** of **Section I - Coverage C - Medical Payments** does not apply.

**D.** The following definition is added to the **Definitions** Sections:

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   **a.** Use or threat of force or violence; or

   **b.** Commission or threat of a dangerous act; or

   **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

POLICY NUMBER: MOJ01050

COMMERCIAL GENERAL LIABILITY
CG 22 34 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following exclusion is added to paragraph **2.**, Exclusion of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) and paragraph **2.,**Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager, or

**2.** Inspection, supervision, quality control or engineering services done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

CG 22 34 10 93          Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:   MOJ01050                         COMMERCIAL GENERAL LIABILITY
                                                           MSA  EIFS 01 (08 2003)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - Exterior Insulation and Finish System

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**In consideration of the premium charged, it is agreed the following exclusion is made a part of this policy**

**1.   Exterior Insulation And Finish System**
"Bodily injury" or "property damage" included in the "products-completed operations
hazard" for any claims or suits arising out of Exterior Insulation and Finish Systems
(commonly referred to as synthetic stucco) application, installation, use or sale.

For the purpose of this endorsement, an "Exterior Insulation and Finish System" means
any exterior cladding or finish system used on any part of any structure, and consisting of
any or all of the following, or similar, processes or applications:

a.   A rigid or semi rigid insulation board made of expanded polystyrene or other
      materials and
b.   The adhesive and or mechanical fasteners used to attach the insulation board to the
      substrate, and
c.   A reinforced base coat, and
d.   A finish coat providing surface texture and color.

THIS ENDORSEMENT CHANGES THE CERTIFICATE.
PLEASE READ IT CAREFULLY.

# FUNGUS OR SPORE EXCLUSION

This endorsement modifies insurance provided under the policy.

This insurance does not apply to:

(1) "Bodily injury," "property damage" or "personal and advertising injury" caused directly or indirectly, in whole or in part, by:

    **a.** Any "fungus" or "spore," including "fungi" or "spores"; or

    **b.** Any substance, vapor or gas produced by or arising out of any "fungus," "fungi," "spore," or "spores"; or

    **c.** Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus," "fungi," "spore" or "spores"; or

    **d.** Actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "fungus" or "spore," including "fungi" or "spores."

Such damage or injury is excluded regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

(2) Any loss, cost or expense arising out of any:

    **a.** Request, demand, order to statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess "fungus," "fungi," "spore," or "spores" or the effects of same (including, but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust).

    **b.** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing "fungus," "fungi," "spore," or "spores" or the effects of same (including, but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust).

(3)     With respect to this endorsement, Exclusion **2.b. - Contractual Liability** is replaced by the following:

      **b.**     "Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include, but not limited to, "bodily injury," property damage," or "personal and advertising injury" to which this endorsement applies.

**Additional Definitions:**

For the purpose of this endorsement, the following definitions are added:

"Fungus" and/or "fungi" includes, but is not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust.

"Spore" and/or "spores" means any reproductive body produced by or arising out of any "fungus" or "fungi."

**This endorsement, effective**    02/16/2014    **at 12:01 a.m. standard time, forms a part of**

**Policy #:** MOJ01050

**Issued to:** SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

**By:** MSA Insurance Company

## ROOFING OPERATIONS EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

The Insured agrees, as a condition of coverage, to the following endorsement:

All "Open Roofs" shall be covered by the contractor if the roof is to be left unattended. Contractor must take "Appropriate" steps to determine adverse weather and provide "Appropriate" temporary waterproof covering, able to withstand the elements. If contractor fails to do either, any resulting "Property Damage" to any building or structure or its content(s) will not be covered by this policy.

The term "Open Roofs" as used in this endorsement shall include any roof or section thereof where the protective covering (shingles, tar, felt paper, etc.) has been removed leaving exposed the wood shell in addition to the wood shell or section thereof being removed.

The term "appropriate" as used in this endorsement shall mean that conduct or action customarily taken or used by similar contractors in the jurisdiction to protect or prevent damage, or that which is customarily done by contractors in the same field under similar circumstances.

### TORCH DOWN AGREEMENT

The contractor will have at hand a functional fully charged 15 lb. or larger dry chemical fire extinguisher when hot tar or other heat processes are being used. The contractor agrees to remain at the job site for a period of not less than 30 minutes after any torch down or similar heat process work has been performed. The contractor will perform a final inspection of the work completed and the job site immediately preceding departure from the premises.

MSA MJ-16 (08/96)

# SPECIAL CONDITIONS ENDORSEMENT

## SUBCONTRACTORS

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective: 02/16/2014        Issued to: SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

Endorsement No.:                         By: MSA Insurance Company

Policy No.: MOJ01050

Countersigned by: _____

### SPECIAL CONDITION ENDORSEMENT - SUBCONTRACTORS

As a condition of coverage provided by this policy, Certificates of Insurance with limits of Liability equal to or greater than those specified below must be obtained from all subcontractors. These certificates must be obtained prior to the performance of any work on behalf of the Named Insured and must be maintained during the term of such work.

**LIMITS OF INSURANCE**

1. Coverage equal to or greater than the coverage provided by this policy.

                            OR

2. General Aggregate Limit
   (Other Than Products-Completed Operations)         $   300,000
   Products Completed Operations Aggregate Limit      $   300,000
   Each Occurrence Limit                              $   300,000

Failure to comply with this provision does not alter the coverage provided by this policy. However, should you fail to comply, Sub-Contractors will be considered your employees and a premium charge will be made according-ly. The entire cost of all work sublet will be used as the premium basis for the work performed.

_____        _____
Named Insured                          Date
Authorized Representative

MSA  MJ-CGL-001D 01-09

**This endorsement, effective**    02/16/2014    **at 12:01 a.m. standard time, forms a part of**

**Policy #:**  MOJ01050

**Issued to:**  SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

By:   MSA Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

## CONTRACT LABOR ENDORSEM ENT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Section V - Definitions, is amended as follows:

Part 5. "Employee" is deleted and replaced with the following:

5. "Employee" includes a "leased worker" and "Contract Labor."
"Employee" does not include a "Temporary Worker."

a. "Contract Labor" means a person hired by you for a specific job or contract to perform duties related to the conduct of your business, but without the benefit(s) of a permanent "employee".

_____                                              _____

Date                                                                              Signed by Insured

MSA  SC-14 (01-2010)

(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective 02/16/2014      at 12:01 a.m. standard time, forms a part of

Policy #: MOJ01050

Issued to: SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

By: MSA Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT - COMMON POLICY CONDITIONS

This endorsement modifies insurance provided under the following:
ALL COVERAGE PARTS IN THIS POLICY

**The following is added to the Common Policy Conditions (IL 00 17):**

**G.      Other Insurance With This Company**

If this policy contains two or more Coverage Parts providing coverage for the same "occurrence," "accident," "cause of loss," "injury," "loss" or offense, the maximum limit of insurance under all Coverage Parts shall not exceed the highest limit of insurance under anyone Coverage Part.

**The following is added to Section III - Limits of Insurance:**

If we have issued policies of insurance to you or any insured for more than one annual period, the most we will pay for damages by reason of "bodily injury" or "property damage" or "personal and advertising injury" to which this insurance applies, and to which the insurance provided by any other policy issued by us applies, is the applicable limit of insurance then available to the insured under the policy in effect at the time the injury or damage first actually occurred, regardless of whether such injury or exposure to it  continues after the policy period in which it first actually occurred. We shall have no duty or obligation to pay any damages under any other policy of insurance that may have been issued by us, whether earlier in time or later in time. All defense fees and costs will also be payable only under this policy.

By _____

Authorized Representative

**(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)**

**This endorsement, effective    02/16/2014    at 12:01 a.m. standard time, forms a part of**

**Policy #: MOJ01050**

**Issued to: SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.**

**By: MSA Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## SERVICE OF SUIT CLAUSE

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

**MSA Insurance Company**                                           hereby appoints the highest State official in
charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance
Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as
designated by the State of  **Texas**                                   and his successor or
successors in office as his and their duly authorized deputies, as the true and lawful attorney of
**MSA Insurance Company**                              in and for the aforesaid State, upon whom all
lawful process may be served in any action, "suit" or proceeding instituted in the said State by or
on behalf of any insured or beneficiary against the  **MSA Insurance Company,**
arising out of the insurance policy to which this provision is attached, provided a copy of any
process, "suit", complaint or summons is sent by certified or registered mail to:

**MSA Insurance Company**
**4601 Touchton Road East, Suite 3400**
**Jacksonville, FL 32245**

**MSA  SC-9 (08/05)**                                  _____

                                                                                Authorized Representative

(The attaching clause need be completed  only when this endorsement is issued subsequent to preparation of the policy.)

**This endorsement, effective** 02/16/2014                    **at 12:01 a.m. standard time, forms a part of**

**Policy #:** MOJ01050

**Issued to:** SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

**By:** MSA Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**EXCLUSION - CLASSIFICATION OR OPERATIONS NOT LISTED**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury" or
"advertising injury" arising from any classification or operation not specifically listed in the
Declarations of this policy.

All other terms and conditions remain unchanged.

MSA  SL-6 (02/98)                              Authorized Representative

MSA  SL 70 (05/2009)
(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of this policy.)

**This endorsement, effective**    02/16/2014    **at 12:01 a.m. standard time, forms a part of**

**Policy #:** MOJ01050

**Issued to:**  SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.

**By:**  MSA Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

Subparagraph f. of 2. Exclusions of COVERAGE A (SECTION 1) is deleted and replaced by
the following

f.      (1)      "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

    (2)      Any loss, cost or expense arising out of any:

        (a)      Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        (b)      Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, auditory, gaseous, or thermal irritant or contaminant including but not limited to smoke, vapor, soot, fumes, odor, noise, acid, alkalis, chemicals, waste, heating oil, petroleum, oil, gasoline, fuel oil, carbon monoxide, industrial waste, treated sewage; and associated smoke, vapor, soot, odor, fumes from said substances. Waste includes material to be recycled, reconditioned or reclaimed.

_____
Countersignature

POLICY NUMBER:  MOJ01050

COMMERCIAL GENERAL LIABILITY
MSA  WML-3407 (03/05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Exclusion - Construction Professional Liability

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**In consideration of the premium charged, it is agreed the following exclusion is made a part of this policy.**

**The following exclusion is added to paragraph 2., Exclusions of Section 1 - Coverage A - Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal and Advertising Injury Liability:**

**This Insurance does not apply to "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" arising out of:**

1. **The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by an architect, engineer or surveyor;**
2. **Inspection, supervision, quality control, architectural or engineering activities done by or for you.**

MSA  WML-3407 (03/05)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998   □

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc.,  1997

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc.,  1997

**IL 00 21 04 98** ☐

MOJ01050                                                    MSA   MJ 002 (08/96)

**MINIMUM POLICY PREMIUM**

**THIS ENDORSEMENT CHANGES THE POLICY,
PLEASE READ IT CAREFULLY**

This endorsement sets forth the minimum premium for the policy. The
minimum premium for this policy is calculated in accordance with
the following:

(1)   The minimum premium for the policy period is the total policy
      premium as shown on the policy declarations page plus any
      premium adjustment by endorsements and any additional premium
      developed by audit.

(2)   Audits that indicate a return premium will not reduce the
      minimum as stated in paragraph (1).

(3)   If the insured or any one other than the company cancels this
      policy, the return premium will be 90% of the unearned premium
      subject to a minimum of 25% of the minimum premium described
      in paragraph (1).

(4)   If the company cancels the policy for any reason, other than for
      non-payment of premium, then the insured will be returned the
      full amount of the unearned premium without any minimum premium
      restrictions.

Nothing in this endorsement changes any of the terms, conditions, and
limitations of the policy except as stated above.

**MSA Insurance Company**

# IMPORTANT NOTICE REGARDING AGENT AND BROKER COMPENSATION

THE AGENT OR BROKER PLACING YOUR INSURANCE WITH OUR COMPANY MAY RECEIVE A COMMISSION FROM US.  IN ADDITION, TO THE COMMISSION FOR THIS PLACEMENT, THE AGENT OR BROKER MAY ALSO RECEIVE COMPENSATION BASED UPON THEIR OVERALL RELATIONSHIP WITH US, THE SERVICES THEY PROVIDE, WRITING ADDITIONAL POLICIES WITH OUR COMPANY AND ITS AFFILIATES, AND THEIR INTEREST IN A REINSURANCE MECHANISM, IF ANY.  AS IN OTHER INDUSTRIES, THIS ADDITIONAL COMPENSATION REWARDS THESE PRODUCERS FOR SUCH THINGS AS ACHIEVING PRE-SET PROFITABILITY GOALS, LOSS RATIOS LEVELS, VOLUME LEVELS, GROWTH TARGETS, OR OTHER MEASURES WE MAY SET.  PLEASE DIRECT ANY SPECIFIC QUESTIONS ABOUT YOUR INSURANCE REPRESENTATIVE'S COMPENSATION TO HER OR HIM.

# MSA Insurance Company

### POLICY HOLDER DISCLOSURE
### NOTICE OF TERRORISM
### INSURANCE COVERAGE

### SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE

UNDER FEDERAL LAW,          MSA Insurance Company          MUST OFFER YOU COVERAGE FOR CERTIFIED TERRORIST ACTS.  YOU HAVE THE RIGHT TO ACCEPT OR REJECT THE OFFER.  YOU MUST MAKE YOUR SELECTION AND RETURN THIS FORM BEFORE ANY OF YOUR COVERAGES CAN BECOME EFFECTIVE.

CHECK A BOX BELOW, SIGN THE FORM AND RETURN IT.

☐ | I hereby elect to purchase "Certified Terrorism" coverage.  I understand there is a charge for the coverage and I will be billed a premium.  ☐ General Liability Only   ☐ Inland Marine/Cargo Only
☐ General Liability and Inland marine/Cargo
☐ Umbrella
☐ Property
☐ Other

[X] | I hereby elect to have the exclusion for terrorism coverage added to this policy.  I understand that I will have no coverage for losses arising from acts of terrorism.

_____
*Policyholder/Applicant's Signature*

_____
*Print Name*

_____
Date

MSA INSURANCE COMPANY

_____
MOJ01050
_____
*Policy Number (s)*

SLI-LO, LLC; SLI-TK, LLC; SLI Framing Co., Inc.
Named Insured

## EXPLANATION

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have the right to purchase insurance coverage for losses resulting from acts of terrorism , *as defined in Section 102(1) of the Act*:  The term "act of terrorism" means any act that is certified by the Secretary of Treasury – in concurrence with the Secretary of State, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM "CERTIFIED ACTS OF  TERRORISM", SUCH LOSSES MAY BE  PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW.  HOWEVER, YOUR  POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE  PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM CHARGED FOR THIS COVERAGE DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE  ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE

CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.